FILED

00 MAY 11 AM 10: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAY 11 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAREN S. BARWICK,  )
                   )
     Plaintiff,    )
                   )   Civil Action No.
v.                 )
                   )   99-AR-1654-S
VESTA INSURANCE GROUP, INC., )
                   )
     Defendant.    )

## MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment. Plaintiff, Karen S. Barwick ("Barwick"), alleges that defendant, Vesta Insurance Group, Inc. ("Vesta"), violated Title VII and the Equal Pay Act by paying her less than male employees for the same work. Barwick also alleges that Vesta violated Title VII when it failed to promote her to the position of Litigation Specialist and when it retaliated against her for filing her complaint of sex discrimination. For reasons set out more fully in the memorandum opinion below, the court will grant Vesta's motion as to all claims except for Barwick's Equal Pay Act claim.

### Pertinent Undisputed and Disputed Facts

Vesta is an insurance company with headquarters located in Birmingham, Alabama. During the relevant time period, Vesta had offices in Birmingham as well as in seven other cities in Ohio,



Indiana, North Carolina, Pennsylvania, Tennessee, and West Virginia.

Around July of 1997, Vesta acquired Anthem, Inc. ("Anthem"), whose headquarters were located in Shelby, Ohio. Jim Hammel ("Hammel") was employed by Anthem as Claims Director at the time of Vesta's acquisition. Following the acquisition, Hammel became employed by J. Gordon Gaines ("Gaines"), a wholly-owned subsidiary of Vesta, as Claims Director of Casualty Claims for Vesta. Gaines is the managing agent and employer of Vesta's staff. Peter Hildebrand ("Hildebrand"), Vesta's former Vice President of Claims and Regulatory Compliance, also was employed by Gaines.

In August of 1997, Vesta offered voluntary severance packages ("VSPs") to nearly all of the former Anthem employees. Six of the employees who accepted the VSPs in the Shelby, Ohio office were Casualty Adjustors. At that time, only one Litigation Specialist, Bill Minnich ("Minnich"), worked for Anthem in its Shelby, Ohio office. Minnich remained as the only Litigation Specialist in that office following the acquisition.

In anticipation of the employees accepting the VSPs, Hildebrand, Hammel, and others began interviewing applicants for Casualty Adjustor positions in Birmingham. Hildebrand requested and retained authorization to hire twenty people. According to

2

Hildebrand and Hammel, Gaines' objective at that time was to find persons who could handle auto liability, auto physical damage, auto subrogation, auto personal injury protection and first party auto benefit claims. Hildebrand, Hammel, Gordon Price ("Price"), Vesta's Claims Manager, and Don Thornton, Vesta's Senior Vice President, jointly made the decisions as to which applicants were hired.

Barwick applied for a Casualty Adjustor position with Gaines on August 6, 1997, and was interviewed separately by Hildebrand, Hammel, and Price on or about August 16, 1997. Although Hildebrand and Hammel claim that they were concerned about Barwick's three year absence from employment in the insurance industry prior to her applying for the position, they hired her nonetheless. Hildebrand and Hammel stated that Barwick was hired primarily because of her general experience working in the insurance industry and Vesta's acute need for Casualty Adjusters at that time. When Barwick was offered the job, she understood that she was being hired as a Casualty Adjustor.

Barwick received a starting salary of $36,500.00 per year. The salaries paid to the other newly hired Casualty Adjustors ranged from $28,499.00 to $37,499.00. The salaries varied depending on the employee's level of experience in the insurance

3

industry. At the time that Vesta hired Barwick, she had approximately 23 years experience in the industry.

Immediately after being hired, Barwick was temporarily assigned to work in Vesta's newly acquired Shelby, Ohio office. Because several of Anthem's employees had accepted the VSPs, there was a large backlog of temporarily unassigned files. Barwick was needed to help alleviate the backlog of files assigned to Litigation Specialist Minnich. Barwick claims that she worked in Ohio until October of 1997, and Vesta claims that Barwick worked there until approximately December of 1997, at which time she was transferred to the Birmingham office. Barwick and Hammel disagree as to what duties Barwick performed, what kind of files she handled, and her level of supervision while in Ohio. It is also disputed as to whether Barwick was still at the Ohio facility when she was given $25,000 in settlement authority. However, it is undisputed that Vesta's Litigation Specialists had settlement authority from $40,000 to $100,000. Minnich, for example, had $50,000 in settlement authority.

In late November or early December, 1997, Barwick went to see Hammel. She complained that she was doing the work of a litigation specialist but was not being paid as one. Barwick claims that Hammel said, "I thought you were a litigation specialist." Hammel

4

told her that he would discuss her concerns with Hildebrand. Barwick eventually spoke to Hildebrand herself. Barwick claims that Hildebrand told her that if she did not like what she was doing, he would make her a Claims Adjustor.

In May of 1998, Barwick began receiving only non-litigation new files. Barwick resigned from Vesta in November of 1998. On or about February 19, 1998, Barwick filed a charge of discrimination with the E.E.O.C., alleging that she was being paid less than male employees for substantially similar work in violation of Title VII and the Equal Pay Act. On March 31, 1999, the E.E.O.C. issued Barwick a notice of a right to sue. She filed this action on June 28, 1999, alleging that Vesta had violated the Equal Pay Act, that it had engaged in discrimination on the basis of sex with regard to compensation, promotion, and job assignments in violation of Title VII, and that it had retaliated against her for filing her E.E.O.C. charge in violation of Title VII.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P., provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a <u>genuine</u> issue of <u>material</u> fact, not merely some factual dispute. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct. at 2511 (citing <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a jury could return a verdict for plaintiff. If so, defendant's motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### **Barwick's Promotion and Retaliation Claims**

Barwick did not mention any causes of action other than pay discrimination in violation of Title VII and the Equal Pay Act in her brief in opposition to Vesta's motion for summary judgment. The Eleventh Circuit has made it clear that "In opposing a motion for summary judgment, 'a party may not rely on his pleadings to

6

avoid judgment against him.' . . . Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)(citations omitted). See also Harris v. Warehouse Services, Inc., 77 F. Supp. 2d 1240, 1248 (M.D. Ala. 1999)(citing Resolution Trust Corp. and holding same).

Because Barwick did not mention any claim for discrimination in promotion or for retaliation in her opposition brief, the court will treat them as abandoned and will grant Vesta's motion as to those claims.[1]

The only claims left are Barwick's claims of pay discrimination because of her sex in violation of the Equal Pay Act and Title VII.

### Applicable Legal Standards

Although Barwick is alleging that the same action by Vesta violated both the Equal Pay Act and Title VII, the standards for proving her claim and the burdens of proof under both statutes are

---

[1] Barwick's complaint refers to discrimination on the basis of her sex in relation to job assignments as well. Vesta points out in its brief that Barwick's attorney clarified this claim during her deposition. As Barwick's attorney explained, the "job assignment" claim is "nothing different than not being paid for the assignment she was doing." He then went on to say that the claim is better characterized as a pay claim. Thus, the court will not address a "job assignment" claim as separate and distinct from Barwick's pay discrimination claim.

vastly different. While both sides obviously understand that the claims are separate and independent of each other, the court feels it necessary to make sure that the parties clearly understand the different legal standards that apply to each statutory claim. On the one hand, a violation of Title VII is easier to prove than a violation of the Equal Pay Act because a plaintiff need only show that the jobs are "similar" as opposed to "substantially equal" to make out a prima facie case. See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518 (11th Cir. 1992). On the other hand, a violation of Title VII is more difficult to prove because a plaintiff still has the ultimate burden of proving discriminatory intent in the face of defendant's legitimate, non-discriminatory reason(s), while under the Equal Pay Act, the **defendant** has the burden of proving that the pay disparity is the result of a factor other than sex.

### Equal Pay Act

The Equal Pay Act states that an employer cannot engage in sex based wage discrimination "within any establishment." 29 U.S.C. § 206(d)(1). Therefore, as the Eleventh Circuit has pointed out, the statute imposes a "geographic limitation" and a plaintiff must show that the chosen comparator(s) worked at the same establishment as part of her prima facie case. See Mulhall v. Advance Security,

Inc., 19 F.3d 586, 590 (11th Cir. 1994). The regulations promulgated by the Secretary of Labor provide the following definition of establishment:

> Although not expressly defined in the FLSA, the term "establishment" had acquired a well settled meaning by the time of the enactment of the Equal Pay Act. It refers to a distinct physical place of business rather than to an entire business or "enterprise" which may include several separate places of business. Accordingly, each physically separate place of business is ordinarily considered a separate establishment.

29 C.F.R. § 1620.9(a).

The Eleventh Circuit has held that "[W]e presume that multiple offices are not a 'single establishment' unless unusual circumstances are demonstrated." Meeks v. Computer Associates Intern., 15 F.3d 1013, 1017 (11th Cir. 1994)(citing 29 C.F.R. § 1620.9(a)). It is undisputed that Barwick worked at two Vesta offices: Shelby, Ohio, and Birmingham, Alabama. The two Litigation Specialists at those offices at the time that Barwick worked there were Bill Minnich and Judith Gregory, respectively. Because Judith Gregory is female, Vesta argues that the only appropriate comparator is Bill Minnich, because the other male Litigation Specialists worked at other offices in different cities.

While it is possible that all of Vesta's offices should be treated as a single "establishment," Barwick has not presented to

9

the court any evidence of "unusual circumstances" which warrant that treatment. In fact, Barwick did not address Vesta's "establishment" argument at all. Therefore, the court agrees with Vesta that the only appropriate comparator here is Bill Minnich because he is the only male Litigation Specialist who worked at the same "establishment" as Barwick. Accordingly, evidence regarding Barwick's duties and level of responsibility after she left the Ohio facility are irrelevant to her Equal Pay Act claim.

In order to establish the rest of her prima facie case, Barwick must show that Vesta "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998)(quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228 (1974). A plaintiff need only show that the jobs are "substantially equal," not that they are identical. See Miranda, 975 F.2d at 1533.[2]

The Eleventh Circuit has pointed out that the appropriate

---

[2] The Eleventh Circuit uses the words "substantially similar" and "substantially equal" interchangeably in its pivotal Miranda decision. See Miranda at 1533. However, this court does not think that "similar" is a synonym for "equal." The statute expressly requires "equal" work, so this court will apply the more stringent standard of "substantially equal" instead of "substantially similar."

10

comparison is between the jobs held by the employees at issue, not between the employees' individual skills and qualifications. Miranda at 1533 (internal citations omitted). Thus, Barwick must demonstrate that the **jobs** that she and Minnich performed are substantially equal, **not** that her and Minnich's **skills and qualifications** are substantially equal.

Barwick claims that she was handling only litigation files while in Shelby, Ohio. She also says that she handled some commercial files and that she dealt with attorneys and settled cases. Comparatively, Minnich handled exclusively litigation files and primarily commercial files. Minnich also settled cases. Although Barwick's evidence as to what her duties were compared to Minnich's is somewhat scant, Vesta's evidence regarding their respective duties is not clear enough so as to eliminate any disputes of material fact. Although Vesta repeatedly quotes long excerpts from Hammel's deposition in which he attempts to explain the general duties of a litigation specialist, Barwick's duties, and Minnich's duties, Hammel's narrative is not particularly illuminating for summary judgment purposes. He basically points out that Minnich's cases were more difficult than Barwick's and that Minnich was more autonomous. Furthermore, portions of those

11

quotes actually support Barwick's testimony. For example, Hammel stated that Barwick "would contact the parties involved in the files and discuss settlement and **negotiate settlements**." Hammel Depo. at 58-59 (emphasis supplied). The latter statement directly contradicts Hammel's affidavit in which he stated that Barwick was not given any settlement authority while she worked in Ohio. Although Minnich's own declaration sets out his duties more clearly than does Hammel's testimony, the court finds that the question of whether the jobs were "substantially equal" is for the jury to decide.

Once a plaintiff has established a prima facie case under the Equal Pay Act (or, at this stage, at least demonstrated a genuine issue of material fact as to her prima facie case), the burden shifts to the defendant to prove by a preponderance of the evidence that the pay disparity is justified by one of four exceptions set out in the Act itself: (1) A seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. See 29 U.S.C. § 206(d)(1). These four exceptions are, in essence, affirmative defenses that the defendant must prove. As the Eleventh Circuit has pointed out, "[B]y moving for summary judgment under the EPA, defendants thrust before the court for

scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense and must establish that there is an absence of **any** issue for jury resolution." Mulhall, 19 F.3d at 591 (emphasis supplied).

Vesta argues that it has proven that the pay disparity is justified under the last, catch-all exception: a factor other than sex. It offers the following factors: the difference in Barwick's and Minnich's education and years of continuous experience and Vesta's exigent business circumstances at the time Barwick was hired. While these are legitimate factors, the court finds that defendant has not satisfied its burden of proof **at this stage**. The court is bound by the Eleventh Circuit's warning that "Defendant's burden is a heavy one" and by its pronouncement that "defendants must show that the factor of sex provided **no** basis for the wage differential." Id. at 590 (emphasis supplied)(internal citations omitted). Thus, the court will deny defendant's motion as to plaintiff's Equal Pay Act claim. Vesta remains free, of course, to file a Rule 50 motion at the appropriate time.

### Title VII

Although under the Equal Pay Act a plaintiff has to show that the jobs at issue are "substantially equal," to establish her prima

13

facie case, under Title VII, she only has to show that the jobs are "similar." Because Barwick has demonstrated a genuine issue of material fact with respect to whether the jobs at issue are "substantially equal," this logically means that there is a genuine issue of material fact with respect to whether the jobs are "similar."

However, as the court pointed out earlier, after the establishment of a prima facie case under the two statutes, the burdens on the defendant are very different. While under the Equal Pay Act the burden of **persuasion** shifts to defendant, under Title VII defendant still has only the burden of production. Thus, all defendant has to do is offer a legitimate non-discriminatory reason for any alleged pay disparity.

Vesta has put forth several legitimate non-discriminatory reasons for the pay disparity between Barwick and other similarly situated male employees, including differences in education level and years of experience. Thus, the burden shifts back to Barwick to offer evidence which, if believed by a jury, would cast doubt on the truthfulness of Vesta's reasons or would demonstrate pretext. Barwick has not met this burden. The only piece of evidence that could possibly cast doubt on the truthfulness of Vesta's reasons is the statement allegedly made by Hammel that he thought that she was

a Litigation Specialist. However, even if Hammel made the statement, it is not evidence of discrimination on the basis of sex. The law is clear that Vesta is free Under Title VII to pay people differently on the basis of non-discriminatory factors, so even if Hammel actually considered Barwick to be a Litigation Specialist, he was free to pay her differently based on the fact that she did not have a college degree and that the other male Litigation Specialists had more years of service and/or more years of uninterrupted service. Thus, the court will grant defendant's motion as to plaintiff's Title VII claim.

### Conclusion

Compared to the Equal Pay Act, Title VII encompasses a broader range of actions that may constitute pay discrimination on the basis of sex. As the Supreme Court pointed out in <u>County of Washington v. Gunther</u>, 452 U.S. 161, 178-179, 101 S.Ct. 2242 2252 (1981), if a woman could not bring a claim under Title VII unless she met the Equal Pay Act's stringent "equal work," standard, then

> a woman who is discriminatorily underpaid could obtain no relief . . . unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress . . . .

The differences in burdens of proof between the two statutes

makes sense in the context outlined above. However, when a plaintiff brings a claim under both statutes and those claims are based on **the same facts and actions**, two different results are possible, if not likely, as evidenced by this case. The fact of the matter is that unless and until Congress further harmonizes the Equal Pay Act with Title VII, a plaintiff can bring two different causes of action based on the same facts, and because of the application of two different standards, get two different results.

Accordingly, the court will deny defendant's motion as to plaintiff's Equal Pay Act claim but will grant defendant's motion as to her Title VII claim.

A separate and appropriate order will be entered.

DONE this 11th day of May, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE